IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>*ex rel.* )<br>  )<br>  Christopher M. Pelletier and )<br>  Jesse Blewer, )<br>                 Plaintiffs, )<br>  )<br>  -vs- )<br>  )<br>  Triad Mechanical Contractors, )<br>  Inc., Delbert A. Laquiere, and )<br>  Ronald Runyon, )<br>  )<br>                 Defendants. ) | Case No.:  3:18-cv-00623-MGL<br><br>COMPLAINT<br>(FILED UNDER SEAL) |

## **INTRODUCTION**

1. Christopher M. Pelletier and Jesse Blewer ("the Relators") bring this action on behalf of the United States of America against Defendants for treble damages and civil penalties arising from the Defendants' false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq*. The violations arise out of false statements and false claims related to a federally-funded construction project undertaken at the Columbia Metropolitan Airport known as FAA AIP No. 3-45-0018-43B-3A ("The Federal Aviation Project") and other projects. The Complaint is based upon misrepresentations made in connection with the Federal Aviation Administration's Disadvantaged Business Enterprise ("DBE") subcontracting program.  Pelletier also asserts individual claims against Defendants Delbert A. Laquiere and Ronald Runyon based upon the civil remedies provision of the Racketeer and Influenced Corrupt Organizations Act, 18 U.S.C. §1964, the Lanham Act, 15 U.S.C. §1125, the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10 *et seq*., as further described in this complaint.

2. As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), the Relators have provided to the Attorney General of the United States and to the United States Attorney for the District of South Carolina a statement of all material evidence and information related to the complaint. This disclosure statement is supported by material evidence known to Relators at their filing establishing the existence of Defendant's false claims. Because the statement includes attorney-client communications and work product of Relators' attorneys and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the Relators understand this disclosure to be confidential and privileged. The initial filing in this case is made under seal, also as required by the Act.

## JURISDICTION, VENUE & PARTIES

3. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. This Court has jurisdiction over the case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This Court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the construction project which is the subject of this action was performed in this District, the Defendants transacted business in this District, and the actions complained of occurred in part in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, Defendants transacted business in this District.

4. The United States of America ("United States"), through the Federal Aviation Administration ("The FAA" or "The Agency") is the nominal and actual Plaintiff in the first cause of action alleged pursuant to the provisions of the Civil False Claims Act and the beneficiary of this action. The FAA operates a DBE subcontracting program pursuant

to Federal Regulations pursuant to which the FAA requires local grant recipients to make good faith efforts to employ the services of DBE subcontractors in the completion of various construction projects. Among other things, these regulations promote and ensure the use of bona fide DBE subcontractors on federally funded construction projects.

5. Defendant Triad Mechanical Contractors, Inc. ("Triad") is a South Carolina corporation engaged in the business of General and Mechanical construction contracting.

6. Defendants Delbert A. Laquiere and Ronald Runyan are individual citizens of the State of South Carolina and are the license qualifiers of Triad and responsible for the management, operation, control and oversight of the business of Triad. Upon information and belief, Laquiere and Runyan are also officers of Triad. Laquiere is the principal owner and shareholder of Triad.

7. Relators and Plaintiffs are citizens of the United States. The Relators bring this action based on their direct, independent, and personal knowledge and on information and belief. Relators are original sources of this information to the United States because Relators have voluntarily disclosed to the United States the information on which the False Claims allegations are based and/or Realtors have knowledge that is independent of and materially adds to any prior publicly disclosed transactions, if any, and Relators voluntarily provided this information to the Government before filing this action pursuant to 31 U.S.C. § 3730 e (4)(B).

8. Plaintiff Pelletier is the sole owner of a South Carolina Limited Liability Company known as Built Right Construction, LLC ("Built Right"). Pelletier and Blewer are employees and officers of Built Right and South Carolina Contractor license qualifiers for that entity. Pelletier is a Native American and, consequently, Built Right is recognized by the South

Carolina Department of Transportation and the Federal Department of Transportation as a certified DBE subcontractor, eligible to participate and qualify for DBE participation. Blewer formerly worked under the supervision and control of Laquiere and Runyan at Triad.

## FACTS

9. Beginning in 2013, Laquiere and Runyan conceived of an enterprise to obtain additional revenues for Triad through the manipulation and control of Built Right and Pelletier. Pursuant to their plan, Laquiere, Runyan and other agents of Triad approached Pelletier and proposed to become a "Mentor" to Built Right and Pelletier. Among other things, Laquiere, Runyan, and other agents of Triad offered to provide financing and bonding to Built Right and Pelletier. Pursuant to this scheme and enterprise Laquiere, Runyan, and other agents of Triad also assumed financial control and management over the operations of Built Right, effectively preventing Pelletier from performing a commercially useful function on projects in which Laquiere, Runyan, and other agents of Triad decided to provide financing.

10. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad directed Blewer to resign from Triad and directed Blewer to take a position at Built Right and become the mechanical license qualifier for Built Right so that Built Right could engage in mechanical contracting.

11. In furtherance of this enterprise, Laquiere, Runyan, and other agents of Triad prepared and drafted an amendment to the Membership Agreement of Built Right, LLC and convinced Pelletier to execute it.

12. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad directed

Blewer to resign from Triad and directed Blewer to take a position at Built Right and become the mechanical license qualifier for Built Right so that Built Right could engage in mechanical contracting.

13. In furtherance of this enterprise, Laquiere, Runyan, and other agents of Triad prepared and drafted an amendment to the Membership Agreement of Built Right, LLC and convinced Pelletier to execute it.

14. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad, established a checking account at the Bank of America, ostensibly in the name of Built Right, but effectively in the name of Triad.

15. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad made a substantial deposit into the account of "Built Right" to show a certain amount of net worth to the South Carolina Contractor's Licensing Board so that Built Right could qualify as an "unlimited" mechanical contractor and bid on public and private jobs with no financial limitations. Thereafter Laquiere, Runyan and other agents of Triad withdrew some portion of this license funding for the benefit of Triad.

16. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad, obtained the letterhead and stationary of Built Right and server and web domain and control over Built Right.

17. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad, obtained the signature stamp of Pelletier and began to manage the accounting and bookkeeping of Built Right.

18. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad, began paying Pelletier a salary and compensation from the "Built Right" account. In furtherance of this

enterprise, Laquiere, Runyan and other agents of Triad, continued to pay Blewer for certain benefits as an employee of Triad even though he was, a nominal employee of Built Right and operating at their direction.

19. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad, opened trade and credit accounts in the name of Built Right.

20. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad, conceived of a plan to move some employees, from time to time, to Built Right's payroll and in fact did move some employees to Built Right's payroll using a wholly owned employee leasing company.

21. In reliance upon the representations of Laquiere, Runyan and other agents of Triad, Pelletier believed that a "Mentor" agreement was lawful and that Laquiere, Runyan and other agents of Triad were acting in the best interests of Built Right.

22. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad, considered and began to plan for the provision of surety bonding for Built Right.

23. In reality, Laquiere, Runyan and other agents of Triad had devised an enterprise with two basic goals: (A) to have Built Right bid and obtain work as a prime contractor using its status as a DBE contractor to be subcontracted to Triad or for the primary financial benefit of Triad, and (B) to employ Built Right as a captive DBE subcontractor to Triad for purposes of meeting DBE goals and requirements. In furtherance of this enterprise, Laquiere, Runyan, and other agents of Triad, considered these kinds of projects to be "Mentor Projects."

24. In furtherance of this enterprise, Laquiere, Runyan and other agents of Triad would effectively manage, operate and control the "Mentor Projects" in the guise of Built Right.

25. The enterprise began in June 2013, but may not have yet concluded because Laquiere, Runyan, and other agents of Triad have continued to retain the signature stamp and indeed continued to use the Built Right name and other symbols and property of Built Right during and throughout 2014 and 2015 as is further detailed in the allegations set forth below.

26. During the enterprise, Laquiere, Runyan and other agents of Triad obtained more than ten public and private construction jobs in the name of "Built Right" which they designated as Mentor Projects. These projects were funded, managed and operated by, Laquiere, Runyan and other agents of Triad. The roles of Triad, Laquiere and Runyan were not disclosed to the parties in privity of contract with "Built Right" and false and fraudulent contracts, bids and other documents were routinely executed and transmitted using the United States Mail and/or electronic mail during the enterprise.

27. During the enterprise, Laquiere, Runyan and other agents of Triad began diverting funds and other assets belonging to Built Right to their own use and using Built Right's name, letterhead, and Pelletier's signature without permission and for their sole benefit. On or about October 13, 2014, Plaintiff Pelletier attempted to terminate the "Mentor" agreement with Laquiere and Triad and sought return of his property, including the signature stamp.

28. Laquiere, Runyan and other agents of Triad, however, refused to return the signature stamp and other property of Pelletier, including the Built Right name and letterhead. Laquiere, Runyan and other agents of Triad continued to use the name and property of Built Right to generate false and fraudulent documents and records throughout 2014 and 2015. Laquiere, Runyan and other agents of Triad continued to use the Bank of America checking account in Built Right's name.

29. During the continuing enterprise, Laquiere, Runyan and other agents of Triad threatened

and coerced Pelletier to prevent Pelletier from reporting these matters to law enforcement officials, thereby obstructing justice.

30. During the continuing enterprise, Laquiere, Runyan and other agents of Triad began to submit bids on public and private projects in the name of Built Right for mechanical subcontracts. On at least one and perhaps more occasions, Laquiere, Runyan and other agents of Triad also submitted bids for the identical scope of work as a mechanical subcontractor in the name of Triad, thus creating a pattern and scheme of collusive bidding for a Project at Fort Jackson South Carolina. The collusive and fraudulent bid documents were sent through the United States Mail or sent electronically in violation of the laws of the United States to numerous general contractors.

31. On or about August 14, 2014, Laquiere, Runyan and other agents of Triad submitted a bid for the Federal Aviation Project in Columbia, South Carolina in the amount of $1,830,047. The bid submitted was the third highest bid. The first and second low bids were rejected for failure to meet DBE goals for the Project. Triad's bid was accepted because it appeared to meet the DBE goal for the Project of three percent.

32. However, to meet the DBE goal, Laquiere, Runyan and other agents of Triad had falsely certified that they had obtained a bona-fide DBE subcontractor quote or price from Built Right Construction in the amount of $101,680.00 when in fact no such bid had been received. Laquiere, Runyan, and other agents of Triad also created a false letter of intent upon which they forged the signature of Chris Pelletier.

33. Laquiere, Runyan, and other agents of Triad submitted these documents to a grantee recipient of the United States, the Columbia Metropolitan Airport, to be awarded a contract in the amount of $1,830,047 and did in fact receive a contract based on that false claim,

false certification, and forgery. Furthermore, each pay application submitted for progress payments was a separate false claim for payment because such progress payment applications or claims were based upon false records and documents, and the amount of the deemed loss to the United States is the face amount of the false and fraudulent contract, $1,830,047. Upon information and belief, Laquiere, Runyan, and other agents of Triad submitted similar false records for other federally funded projects in furtherance of this scheme, the full extent of which is known to Laquiere and Runyan.

34. The United States and its grantee recipient, the Columbia Metropolitan Airport, relied to their detriment upon the foregoing false and fraudulent documents and thereafter paid false claims and invoices based upon false and fraudulent documents and records.

35. The Defendants benefitted financially from false, fraudulent, illegal, racketeering activity and the unlawful use of Pelletier's corporate name, status and property and cannot retain the unlawful benefits from the unlawful use to the detriment of Pelletier. Pelletier is entitled to recover damages for the use of his corporate name, status and property.

**For a First Cause of Action by Relator Plaintiffs Pelletier and Blewer on Behalf of the United States of America Against All Defendants**
**(False Claims Act)**

36. Defendants knowingly, or in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, presented or caused to be presented false or fraudulent claims for payment by the United States in the manner alleged in paragraphs 31-34 in violation of 31 U.S.C. § 3729(a)(1)(A).

37. Defendants knowingly, or in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, made, used, caused to be made, or caused to be used, false or fraudulent records and statements to get false or fraudulent claims paid or approved

in the manner alleged in paragraphs 31-34 in violation of 31 U.S.C. § 3729(a)(1)(B).

38. Defendants knowingly, or in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, conspired to defraud the United States by getting a false or fraudulent claim paid or allowed in the manner alleged in paragraphs 31-34 in violation of 31 U.S.C. § 3729(a)(1)(C).

39. Because of the submission of false and fraudulent claims and the payment of such claims, the United States, unaware of the falsity of the claims and statements, and in reliance upon the accuracy thereof, has been damaged in that it has issued payment in excess of One Million Eight Hundred Thousand Dollars for which Defendants Laquiere, Runyan and Triad are jointly and severally liable.

40. Because of the Defendants' fraudulent actions, the United States has been severely damaged, and is entitled to actual damages, treble damages, statutory penalties for the submission of each false or fraudulent claim, interest, costs and attorney's fees, and other remedies under the civil provisions of the False Claims Act.

**For a Second Cause of Action by Pelletier Against Defendants Laquiere and Runyon**
**(Racketeer Influenced Corrupt Organizations Act)**

41. During the enterprise, Defendants Laquiere and Runyon engaged in the following racketeering activity as defined in 18 U.S.C. §1961, as alleged in paragraphs 9-35:

    (a)    Violations of 18 U.S.C. §1341 (Mail Fraud);

    (b)    Violations of 18 U.S.C. §1343 (Wire Fraud);

    (c)    Violations of 18 U.S.C. §1344 (Financial Institution Fraud); and

    (d)    Violations of 18 U.S.C. §1503 (Obstruction of Justice).

42. Defendants Laquiere and Runyon operated and managed the enterprise through a repetitive pattern of this racketeering activity.

43. Defendants Laquiere and Runyon, through this pattern of racketeering activity acquired and maintained, directly and indirectly, control over Built Right which was the property of Pelletier in violation of 18 U.S.C. §1962 (b).

44. Defendants Laquiere and Runyon, engaged in pattern of racketeering activity, specifically targeting Built Right and Pelletier, in violation of 18 U.S.C. §1962 (c).

45. Defendants Laquiere and Runyon, conspired to engage in racketeering activity to the harm and detriment of Built Right and Pelletier in violation of 18 U.S.C. §1962 (d).

46. Because of the foregoing activities, Defendants Laquiere and Runyon have been enriched and Pelletier has been damaged in his business and his person.

47. Defendants Laquiere and Runyon are therefore liable to Pelletier for his losses and damages, including the disgorgement of funds received by Defendants Laquiere and Runyon through use of Pelletier's property, treble damages, the costs of this suit and reasonable attorney's fees.

### For a Third Cause of Action by Pelletier Against Defendants Laquiere and Runyon
**(Lanham Act)**

48. Defendants Laquiere and Runyon made false and misleading representations of fact in connection with goods and services in commerce by falsely and improperly using the Built Right name, stationary, symbol, trademarks, service marks, domain names, and signature stamp of Pelletier, and forged Pelletier's signature in violation of 15 U.S.C. §1125.

49. Because of these unlawful acts, Pelletier has been damaged and Defendants Laquiere and Runyon are liable to Pelletier for actual damages, attorney's fees, the cost of this action, and punitive damages.

**For a Fourth Cause of Action by Pelletier Against Defendants Laquiere and Runyon**
**(Unfair and Deceptive Trade Practices)**

50. Defendants Laquiere and Runyon engaged in unfair and deceptive trade practices as alleged in paragraphs 9-35 in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 *et seq*.

51. The violations were repetitious and capable of repetition.

52. Because of those violations, Pelletier has been damaged and Defendants Laquiere and Runyon are liable to Pelletier for actual damages, treble damages and attorney's fees pursuant to the Act.

**WHEREFORE**, Relators and Plaintiffs respectfully requests this Court to enter judgment against defendants on the first cause of action, as follows:

(a) That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged within this Complaint, pursuant to the presumed loss rule and as the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. provides;

(b) That civil penalties in the statutory amount be imposed for each false claim that Defendants presented to the United States and/or its agencies;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pressing this case;

(d) That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

(e) That the Relators be awarded the maximum amount allowed to them pursuant to the False Claims Act; and

(f) That this Court award such other and further relief as it deems proper.

(g) As for the second, third, and fourth causes of action, Plaintiff prays for judgment in its favor including actual damages, treble damages, consequential damages, disgorgement of revenues improperly received from unlawful activity, punitive damages, attorney's fees, the costs of this action, and such other and further relief as it deems just and proper.

(The remainder of this page is intentionally blank)

## DEMAND FOR JURY TRIAL

Relators, on their behalf and on behalf of the United States, demand a jury trial on all claims alleged herein.

COUNSEL FOR RELATOR-PLAINTIFFS

By: s/ Henry P. Wall
Henry P. Wall
Fed. Id. No.: 4891
Bruner, Powell, Wall & Mullins, LLC
PO Box 61110
Columbia, SC 29260
Telephone: (803) 252-7693
E-Mail: hwall@brunerpowell.com

Columbia, South Carolina
March 6, 2018

By: s/ William K. Austin
William K. Austin
Federal Id. No.: 10623
Austin Law Firm, LLC
Post Office Box 62551
N. Charleston, SC 29419
Phone: 843-822-3877
Fax: 843-284-3943
waustin@austinlawsc.com

Charleston, South Carolina
March 6, 2018